## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1411 K Street NW, Suite 1400<br>Washington, DC 20005,<br><br>          Plaintiff,<br><br>          v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT<br>500 12th St. SW<br>Washington, DC 20536,<br><br>          Defendant. | Civil Action No. |

## COMPLAINT FOR INJUNCTIVE RELIEF

(1)     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552. Plaintiff seeks injunctive and other appropriate relief to compel defendant U.S. Immigration

and Customs Enforcement to disclose requested records.

### Jurisdiction and Venue

(2)     This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 552(a)(6)(C)(i). This Court

also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district

under 5 U.S.C. § 552(a)(4)(B).

### The Parties

(3)     Plaintiff Campaign Legal Center ("CLC") is a nonpartisan, nonprofit

organization that works to strengthen American democracy through, among other activities,

local, state, and federal efforts to ensure that the public has access to information regarding the

1

financing of our election campaigns and the influence campaign donations have on governmental

policy decisions. Thus, CLC conducts research, authors reports and articles, and provides expert

analysis to the media regularly. CLC participates in litigation throughout the country regarding

campaign finance matters, and in rulemaking and advisory opinion proceedings before the

Federal Election Commission ("FEC") to ensure that the agency is properly interpreting and

enforcing federal election laws. It also files FEC complaints requesting enforcement actions

against individuals or organizations that violate the law. To support these efforts and to educate

the public, CLC regularly seeks information under FOIA regarding federal agency decision-

making.

(4)     Defendant U.S. Immigration and Customs Enforcement ("ICE") is an "agency"

within the meaning of 5 U.S.C § 552(f)(1).

### Background

(5)     In August 2016, the Department of Justice Office of Inspector General ("OIG")

issued a report concluding that "contract prisons incurred more safety and security incidents per

capita than comparable BOP institutions."[1]

(6)     The OIG report in particular highlighted the problems at private prisons operated

by GEO Group Inc. ("GEO Group"), one of the largest private prison contractors in the nation.

Specifically, the report noted that GEO Group's "contract prisons had more incidents per capita

compared to those operated by [other contractors] for contraband finds, several types of reports

---

[1]     Office of the Inspector Gen., U.S. Dep't of Justice, *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons*, at ii (Aug. 2016), https://oig.justice.gov/reports/2016/e1606.pdf#page=2.

of incidents, lockdowns, guilty findings on inmate discipline charges, positive drug test results, and sexual misconduct."[2]

(7)     On August 18, 2016, then-Deputy Attorney General Sally Yates issued a memorandum instructing the Bureau of Prisons to phase-out the use of privately operated correctional facilities, writing that private prisons "compare poorly to our own Bureau facilities" and "do not provide the same level of correctional services, programs, and resources; [ ] do not save substantially on costs; and as noted in a recent report by the Department's Office of Inspector General, [ ] do not maintain the same level of safety and security."[3]

(8)     The following day, August 19, 2016, GEO Group's wholly owned subsidiary, GEO Corrections Holdings, Inc., contributed $100,000 to Rebuilding America Now, a "super PAC" supporting Donald Trump's campaign for president.

(9)     Rebuilding America Now had the blessing of the Trump campaign as one of its preferred super PACs. According to media reports, President Trump's then-campaign manager, Paul Manafort, called into a July 2016 meeting of top donors to Rebuilding America Now informing them that they were the only super PAC he was addressing.[4]

(10)     At the same meeting of the super PAC's donors, attendees were shown a quote from then-Governor Mike Pence, who stated that "[s]upporting Rebuild [sic] America Now is one of the best ways to stop Hillary Clinton and help elect Donald Trump our next president!"[5]

---

[2]     *Id.* at 15.

[3]     *See* Memorandum from Sally Q. Yates, Deputy Attorney Gen., to Acting Dir. of Fed. Bureau of Prisons (Aug. 18, 2016), https://www.justice.gov/archives/opa/file/886311/download.

[4]     Alex Isenstadt & Kenneth P. Vogel, *Trump Blesses Major Super PAC Effort*, POLITICO (July 20, 2016), http://www.politico.com/story/2016/07/trump-super-pac-donors-225892.

[5]     *Id.* The Politico article mistakenly quotes Pence as referring to "Rebuild America Now"; the link to the slide shown at the meeting contains the actual quote, which referred to Rebuilding

(11)     Federal law prohibits a federal contractor from "directly or indirectly [ ] mak[ing] any contribution of money or other things of value, or [ ] promis[ing] expressly or impliedly to make any such contribution . . . to any person for any political purpose or use." 52 U.S.C. § 30119(a)(1). Federal law likewise prohibits any person from "knowingly [ ] solicit[ing] any such contribution for any such person for any such purpose." *Id.* § 30119(a)(2).

(12)     On November 1, 2016, CLC and an individual, Catherine Hinckley Kelley, filed a complaint with the FEC against Rebuilding America Now and GEO Corrections Holdings, Inc., seeking enforcement for apparent violation of the ban on federal contractor donations.[6] The same day, GEO Corrections Holdings, Inc. contributed an additional $125,000 to Rebuilding America Now.

(13)     In response to CLC's complaint, GEO publicly asserted that "[t]he donation was fully compliant with all applicable federal election laws; although GEO Corrections Holdings Inc., the company that made the donation, is a wholly-owned subsidiary of the GEO Group, it is a non-contracting legal entity and has no contracts with any governmental agency."[7]

(14)     On November 19, 2016, GEO Corrections Holdings, Inc., executed a collective bargaining agreement with the United Government Security Officers of America International Union, and its Local #883. The preamble to that agreement stated that "GEO Corrections Holdings, Inc., manages the Northwest Detention Facility located in Tacoma, Washington under

---

America Now. *See* http://static.politico.com/82/37/a220e5774f6e893fadcc4d48abfe/rebuilding-america-now-pac-slide.jpg.

[6]     *See* Complaint, MUR 7180 (Rebuilding America Now & GEO Corrections Holdings, Inc.) (Nov. 1, 2016), http://www.campaignlegalcenter.org/sites/default/files/11-01-16%20Rebuilding%20America%20Now%20Contractor%20Complaint.pdf.

[7]     Betsy Woodruff, *Did Private Prison Contractor Illegally Boost Trump?,* DAILY BEAST (Dec. 14, 2016), https://www.thedailybeast.com/did-private-prison-contractor-illegally-boost-trump.

the terms of an operations and management agreement with the United States Department of

Homeland Security, Immigration and Customs Enforcement Agency (ICE)." *See* Ex. 1 (12/8/17

Letter, attached as Exhibit A to Exhibit 1).

(15)    On February 21, 2017, two weeks after his confirmation, Attorney General Jeff

Sessions issued a memorandum rescinding the August 18, 2016 directive from Ms. Yates to

phase-out the use of private prisons.

(16)    Attorney General Sessions' single-paragraph memorandum stated that Ms. Yates'

decision "changed long-standing policy and practice, and impaired the Bureau's ability to meet

the future needs of the federal correctional system," and "direct[ed] the Bureau to return to its

previous approach."[8]

(17)    Attorney General Sessions' rescission of the earlier memorandum attracted

significant attention among the press and public,[9] and caused the stock prices of private prisons

to rise significantly.[10] Many news reports pointed out that the private prison companies that

---

[8]     *See* Memorandum from Jefferson B. Sessions III, Attorney Gen., to Acting Dir. of Fed. Bureau of Prisons (Feb. 21, 2017), https://www.bop.gov/resources/news/pdfs/20170224_doj_memo.pdf.

[9]     *E.g.*, Eric Lichtblau, *Justice Department Keeps For-Profit Prisons, Scrapping an Obama Plan*, N.Y. TIMES (Feb. 23, 2017), https://www.nytimes.com/2017/02/23/us/politics/justice-department-private-prisons.html; Jon Schuppe, *Private Prisons: Here's Why Sessions' Memo Matters*, NBC NEWS (Feb. 26, 2017), http://www.nbcnews.com/news/us-news/private-prisons-here-s-why-sessions-memo-matters-n725316; Christopher Dean Hopkins, *Private Prisons Back in Mix for Federal Inmates as Sessions Rescinds Order,* NPR (Feb. 23, 2017), http://www.npr.org/sections/thetwo-way/2017/02/23/516916688/private-prisons-back-in-mix-for-federal-inmates-as-sessions-rescinds-order

[10]     Robert Martin, *The GEO Group Inc (GEO), Corecivic Inc (CXW) Up on Sessions Memo*, NASDAQ (Feb. 23, 2017), http://www.nasdaq.com/article/the-geo-group-inc-geo-corecivic-inc-cxw-up-on-sessions-memo-cm752487.

benefitted from the policy reversal, including GEO Group, had financially supported President

Donald Trump's campaign and inauguration.[11]

(18)     In April 2017, GEO Group was awarded a $110 million contract to build the first

immigrant detention center under the Trump Administration.[12]

**Plaintiff's FOIA Requests and Defendant's Responses**

(19)     By letter dated December 8, 2017, CLC requested a narrow set of clearly defined

documents related to GEO Corrections Holdings, Inc.'s relationship with a single ICE facility.

(20)     The request noted that a collective bargaining agreement dated November 19,

2016 stated the following: "GEO Corrections Holdings, Inc., manages the Northwest Detention

Facility located in Tacoma, Washington under the terms of an operations and management

agreement with . . . [ICE]."  *See* Ex. 1 (12/8/17 Letter, attached as Exhibit A to Exhibit 1).

(21)     Specifically, CLC requested "[a]ll operations and management agreements" and

"[a]ny other agreements or contracts" that occurred "between ICE and GEO Corrections

Holdings, Inc., regarding the Northwest Detention Center in Tacoma, Washington."  *See* Ex. 1.

(22)     CLC requested that any search, review, or duplication fees associated with its

FOIA request be "without or at reduced charge" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(III),

(iii). CLC sought these waivers because it has no commercial interest in the information, will use

---

[11]     *E.g.*, Fredreka Schouten, *Private Prisons Back Trump and Could See Big Payoffs with New Policies*, USA TODAY (Feb. 23, 2017), http://www.usatoday.com/story/news/politics/2017/02/23/private-prisons-back-trump-and-could-see-big-payoffs-new-policies/98300394/; Betsy Woodruff, *Trump Moves to Make Private Prisons Great Again,* DAILY BEAST (Feb. 23, 2017), http://www.thedailybeast.com/articles/2017/02/23/trump-moves-to-make-private-prisons-great-again.html; David Dayen, *Memo Restoring Use of Private Prisons Is Good News for One Company*, NATION (Feb. 24, 2017), https://www.thenation.com/article/memo-restoring-use-of-private-prisons-is-good-news-for-one-company/.

[12]     Meredith Hoffman, *Immigrant Center to Be Built in Texas for $110M*, U.S. NEWS (Apr. 13, 2017), https://www.usnews.com/news/best-states/texas/articles/2017-04-13/texas-getting-first-immigrant-lockup-built-under-trump.

the information to inform the public about the operations of government, and qualifies as a

representative of the news media. *See* Ex. 1 (12/8/17 Letter, attached as Ex. A to Ex. 1).

(23)    CLC also sought expedited processing of its request pursuant to 28 C.F.R. §

16.5(e)(1)(iv) because the request involves a matter of significant media interest. *See* Ex. 1

(12/8/17 Letter, attached as Ex. A to Ex. 1).

(24)    CLC has followed up five times with ICE's FOIA office, but has yet to receive

any documents.

(25)    On December 8, 2017, the day CLC submitted the FOIA request, it received an

automated reply stating that "ICE has received the information you submitted to the ICE-

FOIA@dhs.gov mailbox."

(26)    On January 4, 2018, CLC emailed ice-foia@dhs.gov for an update on its request,

and received an identical automated reply stating that its email had been received.

(27)    On January 9, 2018, CLC called multiple publicly listed ICE phone numbers to

get a status update, but could not reach an ICE FOIA officer. CLC was referred by an employee

to DHS FOIA Headquarters at (202) 343-1743, and was able to speak with "Kristen." Kristen

stated that she was not authorized to provide non-public phone numbers, but asked for CLC's

information and said she would email it to the appropriate FOIA officer.

(28)    On January 12, 2018, CLC received an email acknowledging receipt of its

December 8, 2017 request. The email stated that "[t]his request has been received and will be

processed by the intake team," but claimed there was a "backlog" in FOIA requests and that

CLC would receive a letter with a tracking number once its request was processed.

(29)    On January 29, 2018, CLC repeatedly tried calling ICE at (866) 633-1182 for an

update, but was unable to reach an ICE representative.

(30)     On February 16, 2018, ten weeks after CLC submitted its FOIA request, ICE sent

CLC an email acknowledging the request and assigning reference number 2018-ICFO-20353.

The email stated that ICE was invoking a ten-day extension, erroneously claiming that CLC's

request "seeks numerous documents that will necessitate a thorough and wide-ranging search."

*See* Ex. 1 (2/16/18 Email, attached as Ex. B to Ex. 1).

(31)     An agency may only take a ten-day extension in "unusual circumstances" and to

the extent "reasonably necessary" under three defined circumstances, including to "appropriately

examine a voluminous amount of separate and distinct records which are demanded in a single

request." 5 U.S.C. § 552(a)(6)(B)(iii)(II).

(32)     ICE's February 16, 2018 email did not acknowledge CLC's request for expedited

processing, but did grant CLC's request for a fee waiver. *See* Ex. 1 (2/16/18 Email, attached as

Ex. B to Ex. 1).

(33)     On March 9, 2018, CLC sent ICE a letter recounting this series of events, and

notifying ICE that it intended to file suit if document production did not begin within two weeks.

*See* Ex. 1 (3/9/18 Letter).

(34)     ICE has not responded to CLC's letter, and the online FOIA tracking website for

ICE continues to list January 29, 2018 as the "Estimated Delivery Date" for the requested

documents—a date that has long since passed, and that predated ICE's February 16, 2018 email

erroneously claiming that CLC sought "numerous" documents. *See* Ex. 2 (Online Tracking

Report).

(35)     To date, ICE has not produced any documents in response to CLC's request.

(36)    ICE has exceeded the generally applicable twenty-day deadline for processing

FOIA requests, as well as the ten-day extension ICE granted itself, purportedly pursuant to 5

U.S.C. § 552(a)(6)(B).

(37)    CLC has exhausted the applicable administrative remedies with respect to its

FOIA request. *See* 5 U.S.C. § 552(a)(6)(C)(i).

(38)    ICE has wrongfully withheld the requested records from CLC.

## CAUSE OF ACTION

**Violation of Freedom of Information Act for Wrongful Withholding of Agency Records**

(39)    Plaintiff repeats and realleges paragraphs 1 through 38.

(40)    Defendant has wrongfully withheld agency records requested by plaintiff by

failing to comply with the statutory time limits for the processing of FOIA requests.

(41)    Plaintiff has exhausted all applicable administrative remedies with respect to

defendant's failure to comply with the applicable time limits.

(42)    Plaintiff is entitled to injunctive relief with respect to the release and disclosure of

the requested documents.

## **REQUESTED RELIEF**

WHEREFORE, plaintiff requests that this Court:

(1)      order defendant to process immediately the requested records in their entirety, with all processing fees waived;

(2)      order defendant, upon completion of such processing, to disclose the requested records in their entirety to plaintiff;

(3)      order defendant to produce a Vaughn Index to the extent it claims a FOIA exception or privilege applies to any document or part thereof;

(4)      award plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(5)      grant such other relief the Court may deem just and proper.

Dated: April 10, 2018                    Respectfully submitted,

                                         /s/ Mark P. Gaber
                                         Mark P. Gaber (DC Bar No. 988077)
                                         CAMPAIGN LEGAL CENTER
                                         1411 K St. NW, Ste. 1400
                                         Washington, DC 20005
                                         (202) 736-2200

                                         *Counsel for Plaintiff*