

March 9, 2018

By Electronic Mail (ICE-FOIA@dhs.gov)

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
ICE-FOIA@dhs.gov

**RE: FOIA Case Number 2018-ICFO-20353**

The Campaign Legal Center ("CLC") respectfully requests that U.S. Immigration and Customs Enforcement ("ICE") begin producing documents in response to the above-captioned FOIA request within two weeks of the date of this letter.

On December 8, 2017, CLC submitted a simple request for a single clearly-identified document and requested expedited processing. Contrary to the statutory requirement that an agency respond to a request within 20 days, ICE failed to even acknowledge CLC's request for ten weeks, and contrary to DHS regulations, ICE failed to inform CLC of any "unusual circumstances" requiring an extension. Today, three months after CLC's initial request, ICE has yet to produce any documents.

CLC is currently engaged in administrative proceedings before another federal agency related to the activity that is the subject of these FOIA requests.  The requested documents may be critical to the resolution of those proceedings.  Accordingly, if document production does not begin within two weeks, CLC intends to file suit challenging ICE's unreasonable delay in fulfilling the above-captioned requests.

## CLC's FOIA Request

On December 8, 2017, CLC submitted a request via email to ICE's FOIA office. The request is attached as Exhibit A.

The request noted that a collective bargaining agreement dated November 19, 2016 between ICE and GEO Corrections Holdings, Inc., stated that "GEO Corrections Holdings, Inc., manages the Northwest Detention Facility located in Tacoma, Washington under the terms of an operations and management agreement with [ICE]," and accordingly sought:

- All operations and management agreements between ICE and GEO Corrections Holdings, Inc., regarding the Northwest Detention Center in Tacoma, Washington;
- Any other agreements or contracts between ICE and GEO Corrections Holdings, Inc., regarding the Northwest Detention Center in Tacoma, Washington.

### ICE's Failure to Comply With Its FOIA Responsibilities

CLC has followed up four times with ICE's FOIA office but has yet to receive any documents.

On December 8, 2017, the day CLC submitted the request, CLC received an automated reply from ICE stating that ""ICE has received the information you submitted to the ICE-FOIA@dhs.gov mailbox."

On January 4, 2018, CLC emailed ice-foia@dhs.gov requesting an update on the request. CLC received another automated reply identical to the email received on December 8, 2017 stating that the email had been received.

On January 9, 2018, CLC called multiple publicly-listed ICE phone numbers attempting to get a status update, but could not get an ICE FOIA officer on the line. CLC was eventually referred to DHS FOIA Headquarters at the phone number (202) 343-1743. There, CLC spoke with "Kristen," who stated that she was not allowed to give out any non-publicly listed phone numbers, but took down CLC's info, and stated she would send an email to the relevant FOIA officer.

On January 12, 2018, CLC received another email acknowledging receipt of CLC's December 8, 2017 request. The email stated that "[t]his request has been received and will be processed by the intake team," but that there was a "backlog" in FOIA requests and that CLC would receive a letter with a tracking number once the month-old request was processed.

On January 29, 2018, CLC repeatedly tried calling ICE's (866)-633-1182 number for an update but was unable to get through.

On February 16, 2018, ten weeks after CLC submitted its request, ICE sent an email acknowledging that CLC's request was received on December 8, 2017 and, for the first time, assigning it reference number 2018-ICFO-20353. The email also stated that ICE was invoking a 10-day extension, erroneously claiming that CLC's request "seeks numerous documents that will necessitate a thorough and wide-ranging search." The acknowledgement email is attached as Exhibit B.

On February 16, 2018, after receiving this acknowledgement, CLC called the (866) 633-1182 number to discuss the request but was again unable to get through to an ICE FOIA officer. CLC then emailed the ICE FOIA office asking that Fernano Pineiro, the officer named in ICE's acknowledgement letter, or another ICE FOIA officer call CLC back to discuss the request. CLC received no response, via phone or via email.

As of March 8, 2018, none of the DHS offices has provided records that are responsive to this request. To date, the request status posted on https://www.dhs.gov/foia-status still displays an estimated document delivery date of January 29, 2018, more than two weeks before ICE sent an official acknowledgement letter.

## Legal Analysis

The FOIA statute anticipates that an agency will respond to a request within 20 days after receiving the request. 5 U.S.C. § 552(a)(1). Moreover, DHS FOIA regulations provide that:

> Whenever the statutory time limits for processing a request cannot be met because of "unusual circumstances," as defined in the FOIA, and the component extends the time limits on that basis, the component shall, *before expiration of the twenty-day period to respond*, notify the requester in writing of the unusual circumstances involved and *of the date by which processing of the request can be expected to be completed*.

6 C.F.R. § 5.5(c) (emphasis added).

ICE acknowledged that it received CLC's request on December 8, 2017, and the twenty-day period (excluding weekends and federal holidays) therefore expired on January 9, 2018.

Yet ICE did not respond to CLC's request within the statutorily-required 20 day period, nor did it inform CLC of any "unusual circumstances" requiring an extension, pursuant to DHS regulations.

It was 46 days after CLC's initial request that ICE first responded. Moreover, despite ICE's severely delayed response, the agency sought an even further extension--but did not comply with DHS regulations requiring that it "notify the requester in writing of the unusual circumstances involved and of the date by which processing of the request can be expected to be completed." 6 C.F.R. § 5.5(c). ICE instead made a generic reference to an "increasing number of FOIA requests received by this office," and erroneously claimed that "your request seeks numerous documents that will necessitate a thorough and wide-ranging search," and failed to offer CLC a date by which the processing would be complete.

Moreover, despite CLC's request for expedited processing, ICE has failed to notify CLC within ten calendar days of the receipt of a request for expedited processing of its decision whether to grant or deny expedited processing," as required by DHS regulations. 6 C.F.R. § 5.5(e)(4).

These delays in disclosing the requested records are unreasonable. Accordingly, CLC intends to file a lawsuit if the records are not timely disclosed.


Respectfully submitted,


/s/

Brendan Fischer
Director, Federal Reform
Campaign Legal Center

# Exhibit A



December 8, 2017

By Electronic Mail (ICE-FOIA@dhs.gov)

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
ICE-FOIA@dhs.gov

*RE: Freedom of Information Act Request*

Dear FOIA Officer:

The Campaign Legal Center ("CLC") submits this request pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.,* for the operations and management agreements between GEO Corrections Holdings, Inc., and U.S. Immigration and Customs Enforcement ("ICE") regarding the Northwest Detention Facility in Tacoma, Washington.

## I.       Background

A collective bargaining agreement dated November 19, 2016 between ICE and GEO Corrections Holdings, Inc., stated that:

> GEO Corrections Holdings, Inc., manages the Northwest Detention Facility located in Tacoma, Washington under the terms of an operations and management agreement with the United States Department of Homeland Security, Immigration and Customs Enforcement Agency (ICE) hereinafter referred to as the "Client." As the management agent for the Contract Agency (s), the terms of this document are governed by Company's contract(s) and standards established by the Clients. [1]

---

[1]      *Northwest Detention Facility Collective Bargaining Agreement Between GEO Corrections Holdings, Inc. (GEO) And United Government Security Officers of America International Union, and its Local #883*, (Nov 19, 2016), http://local883.com/wp-content/uploads/2017/04/NWDC-FINAL-with-Signature-Page-12-1-2016-1.pdf.

Since November 2016, GEO Group, Inc., GEO Corrections Holdings, Inc., their facilities, and their agreements with ICE have been the subject of sustained media interest.[2]

Furthermore, the Northwest Detention Center itself has received considerable public interest and media attention, particularly this year.[3] This interest has included regular coverage of a recent lawsuit by the State of Washington against GEO Group, Inc., in its capacity as operator of the Northwest Detention Center.[4]

## II.     Requested Records

This request encompasses:

- All operations and management agreements between ICE and GEO Corrections Holdings, Inc., regarding the Northwest Detention Center in Tacoma, Washington;
- Any other agreements or contracts between ICE and GEO Corrections Holdings, Inc., regarding the Northwest Detention Center in Tacoma, Washington.

This request encompasses both digital and physical records.

If some portions of the requested records are exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. 5 U.S.C. § 552(b). If any portion of the requested records is exempt from disclosure, please provide an index of the withheld materials as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972).

## III.     Application for Fee Waiver or Limitation of Fees

---

[2]      *See, e.g.*, Amy Brittain and Drew Harwell, *Private-prison giant, resurgent in Trump era, gathers at president's resort*, WASH. POST (Oct. 25, 2017), https://www.washingtonpost.com/politics/with-business-booming-under-trump-private-prison-giant-gathers-at-presidents-resort/2017/10/25/b281d32c-adee-11e7-a908-a3470754bbb9_story.html?utm_term=.1793d865333f;

[3]      *See, e.g.,* Kenny Ocker, *100-plus immigrants detained in Tacoma on hunger strike, activists say*, THE NEWS TRIBUNE (Apr. 10, 2017), http://www.thenewstribune.com/news/local/article143832854.html; Tim Henderson, *Detention Push Ignites New Deportation Battles,* HUFFINGTON POST (Nov. 17, 2017), https://www.huffingtonpost.com/entry/detention-push-ignites-new-deportation-battles_us_5a0efdaae4b0e30a9585063c.

[4]      *See, e.g.,* Gene Johnson, *Detention center contractor asks judge to toss lawsuit over $1-a-day pay*, ASSOCIATED PRESS (Nov. 20, 2017), http://komonews.com/news/local/detention-center-contractor-asks-judge-to-toss-lawsuit-over-1-a-day-pay; Gene Johnson, *Judge: State can sue detention center over inmate pay*, ASSOCIATED PRESS (Dec. 6, 2017), https://www.seattletimes.com/seattle-news/judge-allows-washington-states-lawsuit-over-detainee-pay-to-proceed/.

**A.  The request is made for non-commercial purposes and will contribute significantly to public understanding of the operations or activities of government.**

FOIA provides that the agency shall furnish requested records without or at reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

As described above in Part I, the requested materials involve matters of significant public interest. Records likely to be disclosed in response to this request will contribute significantly to the public's understanding of how decisions about the allocation of taxpayer funds for federal contracts are made. These details are not already publicly available and the records would provide a more thorough public understanding of the operations of the government.

CLC will use records responsive to this request in the creation of widely disseminated materials and analysis that will educate the public about these matters and the operations of the government. CLC anticipates analyzing the materials gathered through this FOIA request to develop reports,[5] write blogs,[6] and author op-eds.[7] CLC's research and reports are widely disseminated on its blog,[8] through its own website,[9] through social media platforms like Facebook[10] and Twitter,[11] and regular emails to its supporters, among other communications outlets.[12]

---

[5]     *See, e.g.*, Lawrence M. Noble and Brendan M. Fischer, *Funding the Presidential Nominating Conventions: How a Trickle of Money Turned Into a Flood*, Campaign Legal Center (July 26, 2016), http://www.campaignlegalcenter.org/sites/default/files/Funding%20the%20Presidential%20Nominating%20Conventions%20Report.pdf.

[6]     *See, e.g.*, Brendan M. Fischer, *How Trump's Plan to Repeal the Johnson Amendment Could Unleash 'Super Dark Money' Into Our Elections*, Campaign Legal Center blog (Feb. 3, 2017),  http://www.campaignlegalcenter.org/news/blog/how-trump-s-plan-repeal-johnson-amendment-could-unleash-super-dark-money-our-elections;  *Filling the Swamp: Inauguration and Transition Funding,* Campaign Legal Center blog (Jan. 19, 2017), http://www.campaignlegalcenter.org/news/blog/filling-swamp-inauguration-and-transition-funding;

[7]     *See, e.g.,* Trevor Potter, *Donald Trump Hasn't Solved Any of His Conflicts of Interest,* WASH. POST (Jan. 11, 2017), https://www.washingtonpost.com/posteverything/wp/2017/01/11/donald-trump-hasnt-solved-any-of-his-conflicts-of-interest/?utm_term=.0e80b538fb8f.

[8]     *See* Campaign Legal Center blog at http://www.campaignlegalcenter.org/news/262.

[9]     *See* Campaign Legal Center "Reference Materials" library, http://www.campaignlegalcenter.org/research/reference-materials.

[10]     https://www.facebook.com/CampaignLegalCenter/

[11]     https://twitter.com/CampaignLegal

[12]     *See* Campaign Legal Center blog at MEDIUM, https://medium.com/clc-blog.

CLC staff have significant knowledge in ethics and government accountability, and news media regularly rely upon CLC's analysis and expertise.[13] In addition to its own blogs and reports, CLC anticipates analyzing the requested records and disseminating the materials among traditional news outlets.

Requester CLC is a non-profit public interest organization organized under Section 501(c)(3) of the Internal Revenue Code and this request is made for non-commercial purposes.

As such, we request that any applicable fees associated with this request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). A fee waiver in this instance would fulfill Congress' intent in amending the FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

## B. CLC qualifies for a fee waiver as a "representative of the news media."

CLC additionally requests that it not be charged search or review fees for this request because the organization meets the definition of a "representative of the news media" for purposes of the FOIA, since CLC "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(III).

As the D.C. Circuit has held, the "representative of the news media" test is focused on the requestor rather than the specific FOIA request. *Cause of Action v. F.T.C.,* 799 F.3d 1108, 1121 (D.C. Cir. 2015). CLC satisfies this test because (as noted in Part III(A)) CLC applies its expertise and editorial skills to turn raw materials into reports, articles, and op-eds that are widely disseminated on its blog,[14] through its own website,[15] through social media platforms and regular emails to its supporters,

---

[13]     *See, e.g.,* Elizabeth Williamson, *Highflying Mnuchins Take the Country for a Ride*, N.Y. TIMES (Sept. 14, 2017), https://www.nytimes.com/2017/09/14/opinion/mnuchin-funds-honeymoon.html; Walter M. Shaub, Jr., *Walter Shaub: How to Restore Government Ethics in the Trump Era*, N.Y. TIMES (July 18, 2017), https://www.nytimes.com/2017/07/18/opinion/walter-shaub-how-to-restore-government-ethics-in-the-trump-era.html; Philip Bump, *Why Ben Carson's appearance in Phoenix was likely a violation of federal law*, WASHINGTON POST (Aug. 23, 2017), https://www.washingtonpost.com/news/politics/wp/2017/08/23/why-ben-carsons-appearance-in-phoenix-was-likely-a-violation-of-federal-law/?utm_term=.175a1f707481; Manu Raju, *Trump's Cabinet Pick Invested in Company, Then Introduced a Bill to Help It*, CNN (Jan. 17, 2017), http://www.cnn.com/2017/01/16/politics/tom-price-bill-aiding-company/; Christina Wilkie and Paul Blumenthal, *Trump Just Completely Entangled His Business and the U.S. Government*, HUFFINGTON POST (Jan. 11, 2017), http://www.huffingtonpost.com/entry/trump-business-conflicts-of-interests-treasury_us_5876928de4b092a6cae4ec7b

[14]     *See* Campaign Legal Center blog at http://www.campaignlegalcenter.org/news/262.

[15]     *See* Campaign Legal Center "Reference Materials" library, http://www.campaignlegalcenter.org/research/reference-materials.

and through other communications outlets.[16] CLC additionally applies editorial skill to analyze and disseminate materials to other news media outlets, which regularly cite and rely upon CLC's work. The D.C. Circuit has held that an requester may qualify as a news media entity if it "'distribute[s] [its] work' by issuing press releases to media outlets in order to reach the public indirectly" 799 F.3d. at 1125-26.

Courts have found that other organizations with functionally similar missions and engaged in similar public education activities qualify as "representatives of the news media," even if engaged in litigation or other advocacy beyond educating the public about the operations of government. *See e.g. Cause of Action v. F.T.C.,* 799 F.3d 1108, 1121-25 (D.C. Cir. 2015) (finding a public interest advocacy organization that comments to other media outlets about documents it obtains under FOIA a news media requester); *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding "public interest law firm" Judicial Watch a news media requester); *Elec. Privacy Info. Ctr. V. DOD,* 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding nonprofit public interest group that published a biweekly email newsletter a news media requester).

"It is critical that the phrase 'representative of the news media' be interpreted broadly if the act is work as expected,  . . . In fact, *any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'*" 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986), cited in *Nat'l Sec. Archive v. U.S. Dep't of Def*., 880 F.2d 1381, 1386 (D.C. Cir. 1989).

In the event the fee waiver is not granted, I may not be charged for the first two hours of search time, or for the first hundred pages of duplication. Please contact me and advise me of the cost of this request if processing costs exceed $100.

## IV.    <u>Application for Expedited Processing</u>

I request that the processing of this request be expedited pursuant to 28 C.F.R. § 16.5(e)(1)(iv).

As described in Part I, the subject of the request involves a matter of significant media interest.[17]

I certify that my statements concerning the need for expedited processing are true and correct to the best of my knowledge and belief.

\*       \*       \*

In order to expedite delivery of these requested documents and in order to reduce possible fees incurred, I am requesting that these documents be delivered to me either digitally via email (in PDF format), or on a data disk via the U.S. Postal Service.

---

[16]      *See* Campaign Legal Center, MEDIUM, https://medium.com/clc-blog.
[17]      *See* sources cited *supra* at nn. 2-4.

**Please email copies of responsive documents to:**

**mchrist@campaignlegalcenter.org**

**Or, please mail copies of responsive documents to:**

**Maggie Christ**
**Campaign Legal Center**
**1411 K St NW, Suite 1400**
**Washington, D.C. 20005**

Should you elect, for any reason, to withhold, redact, or deny the release of any
record responsive to this request, I request that you provide me with an explanation
for each withholding/redaction, along with pertinent legal citations.

Please confirm receipt of this request and provide me with an estimate of processing
time.

Thank you.

Sincerely,

/s/ Maggie Christ

Maggie Christ
Researcher/Investigator
Campaign Legal Center
mchrist@campaignlegalcenter.org
(202) 868-4799

# Exhibit B

# Maggie Christ

| | |
|---|---|
| **From:** | ice-foia@dhs.gov |
| **Sent:** | Friday, February 16, 2018 11:46 AM |
| **To:** | Maggie Christ |
| **Subject:** | ICE FOIA Request 2018-ICFO-20353 |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

February 16, 2018

Maggie Christ
Campaign Legal Center
1411 K St. NW, Suite 1400
Washington, DC 20005

**RE:   ICE FOIA Case Number 2018-ICFO-20353**

Dear Ms. Christ:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated December 08, 2017, and to your request for a waiver of all assessable FOIA fees. Your request was received in this office on December 08, 2017. Specifically, you requested:

1.) All operations and management agreements between ICE and GEO Corrections Holdings, Inc., regarding the Northwest Detention Center in Tacoma, Washington; 2.) Any other agreements or contracts between ICE and GEO Corrections Holdings, Inc., regarding the Northwest Detention Center in Tacoma, Washington..

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10- day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

ICE evaluates fee waiver requests under the legal standard set forth above and the fee waiver policy guidance issued by the Department of Justice on April 2, 1987, as incorporated into the Department of Homeland Security's Freedom of Information Act regulations[1].  These regulations set forth six factors to examine in determining whether the applicable legal standard for fee waiver has been met.  I have considered the following factors in my evaluation of your request for a fee waiver:

(1) Whether the subject of the requested records concerns "the operations or activities of the government";

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

(4) Whether the contribution to public understanding of government operations or activities will be "significant";

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

Upon review of your request and a careful consideration of the factors listed above, I have determined to grant your request for a fee waiver.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2018-ICFO-20353**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2017-ICFO-XXXXX or 2018-ICFO-XXXXX tracking number. If you need any further assistance or would like to

discuss any aspect of your request, please contact the FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison, Fernando Pineiro, in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Regards,


ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

---

[1] 6 CFR § 5.11(k).